IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRYSANTHIE CHRISSOS,

       Plaintiff,

v.                                       CIV 09-0704 KBM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff Chrysanthie Chrissos's motion to reverse the Commissioner's decision denying her Supplemental Security Income ("SSI") benefits and remand for payment of benefits, or, in the alternative, remand for a rehearing *(Docs. 15, 17)*. Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 3, 7.*

If substantial evidence supports the administrative law judge's ("ALJ") findings and the correct legal standards were applied, the Commissioner's decision stands, and Plaintiff is not entitled to relief. *See Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005). A deficiency in either area is independent grounds for relief. *See Hamlin v. Barnhart,* 365 F.3d 1208, 1214 (10th Cir. 2004). "'Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005)). I can neither reweigh the evidence nor substitute my judgment for

that of the agency. *Hamlin*, 365 F.3d at 1214; *see also Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Thus,

> "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Zoltanski*, 372 F.3d at 1200. We may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.*

*Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). The entire record has been meticulously reviewed. *See, e.g., Grogan*, 399 F.3d at 1262. For the reasons set forth below, Plaintiff's motion is denied and the decision of the Commissioner stands.

### The Sequential Evaluation Process

The Social Security Administration employs a "five-step sequential evaluation process to determine disability." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *see also* 20 C.F.R. § 416.920. At steps one though four of the process, the claimant must show that she is not working at a substantial gainful activity, she has a severe medically determinable physical or mental impairment or combination of impairments which significantly limit her ability to do basic work activities, she has an impairment that meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that it meets the duration requirement, or that she is unable to perform her past relevant work. *See* 20 C.F.R. § 416.920(a). At the fifth step, the burden shifts to the Commissioner, who must show that the claimant is capable of performing an alternative job that is available in the national economy. *See Barnhart*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

This case involves a claimant with a substance addiction, and special statutes and regulations govern such cases when drug and alcohol addictions ("DAA") are implicated. *See*

2

*Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006). Pursuant to the Contract with America

Advancement Act ("CAAA") of 1996, Pub. L. No. 104-121, 110 Stat. 8484, 852, the Social

Security Act was amended to provide that "[a]n individual shall not be considered to be disabled

. . . if alcoholism or drug addiction would . . . be a contributing factor material to the

Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(c); *see*

*Salazar*, 468 F.3d at 622-23. The purpose of the CAAA is "to discourage alcohol and drug

abuse, or at least not to encourage it with a permanent government subsidy." *Grigsby v.*

*Barnhart*, 294 F.3d 1215, 1220 (10th Cir. 2002) (quoting *Ball v. Massanari*, 254 F.3d 817, 824

(9th Cir. 2001)). The ALJ must first conduct the five-step sequential evaluation. If the ALJ

determines the claimant is disabled and has medical evidence of a drug addiction or alcoholism,

the ALJ must then determine whether the substance addiction is a contributing factor material to

the disability determination. *See* 20 C.F.R. § 416.935(a).

The Social Security Administration has set forth a two-step analysis which the ALJ must

follow when he has medical evidence of a substance addiction. *See* 20 C.F.R. § 416.935(b).

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (I) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we

3

> will find that your drug addiction or alcoholism is not a contributing
> factor material to the determination of disability.

*Id.*

## Background

Plaintiff, now 33-years old, has a high school education and attended college for two years but never obtained a degree. Plaintiff has past work experience in the restaurant industry, however, it does not qualify as past work experience under the Social Security regulations. Plaintiff filed her application for SSI on July 30, 2006, alleging disability due to depression, anxiety, PTSD, opium dependence, and migraine headaches. *See Administrative Record (Record)* at 123-24; *see also Doc. 15* at 1-2. Her application was denied initially and upon reconsideration. Plaintiff then requested an administrative hearing. On August 14, 2008, Plaintiff appeared with her attorney Gary Martone at a hearing in Albuquerque, New Mexico, before ALJ Ben Willner. *See Record* at 9. The ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of her application, has the severe impairments of heroin abuse, a major depressive disorder, a generalized anxiety disorder, and a non-severe impairment of obesity, but that none of these impairments met Listings severity. *See Record* at 11-13.

At step four, the ALJ found Plaintiff's symptoms and limitations with regards to her drug use, daily activities, and motivation, fully credible. The ALJ based his finding on a combination of Plaintiff's testimony and the medical opinions from Finian J. Murphy, Ed. D., Miriam Komaromy, M.D., and Julian Lev, Ph.D. Accordingly, he found that with her substance abuse Plaintiff has the RFC to perform a full range of work at all exertional levels, but that she has non-exertional limitations that affect her ability to understand, remember, and carry out simple, repetitive job instructions and tasks and to work in close proximity to or interact appropriately

with supervisors, co-workers, or the general public. *Record* at 13. As such, at step five the ALJ determined that there are no jobs that Plaintiff can perform, and therefore, found her disabled with her substance use. *Id.* at 14.

The ALJ continued his analysis under 20 C.F.R. § 416.935 to determine whether Plaintiff would still be found disabled based upon all remaining impairments if she stopped using drugs. *See id.* at 15. The ALJ found that absent drug use, Plaintiff's depression disorder and anxiety disorder would still be severe but would not meet Listings severity. *See id.* He also determined that with these remaining impairments, Plaintiff would have only a "mild" restriction in activities of daily living, "mild" difficulties in social functioning, "moderate" difficulties in concentration, persistence, or pace, and no episodes of decompensation. *Id.* In determining Plaintiff's RFC without substance use, the ALJ stated that he considered opinion evidence as well as all symptoms and the extent to which they can reasonably be accepted as consistent with the objective medical evidence and other evidence. *Id.* at 16. He further stated:

> If the claimant stopped the substance use, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.
>
> *   *   *
>
> In sum, the above the residual functional capacity assessment is supported by the opinion of Julian Lev, Ph.D. dated December 1, 2008 indicating that in the absence of substance abuse, the claimant would be able to understand and remember instructions and sustain concentration and persist at tasks. In addition, she would be able to interact with the public, co-workers, and supervisors and would likely be able to adapt to changes in the workplace and be aware of normal hazards in the workplace. However, Dr. Lev was also of the opinion that if the claimant continued to be addicted to heroin, he would

> expect her addiction to contribute to her depression symptoms and make it difficult for her to find and maintain employment. I give Dr. Lev's opinions great weight, because they are well supported by objective clinical findings and are consistent with the record as a whole. I give greater weight to Dr. Lev's opinions than to those of treating sources, Cristina Carlson, APRN and Rev. Patricia L. Eckart, L.A.D.A.C., for the reasons set forth above. In addition, because of her history of non-compliance with medications for anxiety, I find that the claimant's complaints of anxiety symptoms not to be credible in the degree alleged. Therefore, I find that the claimant's anxiety, either alone or in combination with other impairments, would not preclude her from performing simple, unskilled work if she stopped the substance abuse.

*Record* at 16, 18-19.

Accordingly, the ALJ found that if Plaintiff stopped using drugs, she would have the RFC to perform the basic mental demands of simple, repetitive, unskilled work. *Id.* at 19. Plaintiff would not have a substantial loss of ability to understand, remember, and carry out simple, repetitive job instructions and tasks, to work in close proximity to and interact appropriately with supervisors, co-workers, and the general public, or to deal with changes in a routine work setting. *Id.* The ALJ then found at step five that there would be a significant number of jobs which Plaintiff could perform. Consequently, the ALJ concluded that Plaintiff's substance use disorder is a contributing factor material to the determination of disability, and she was deemed not disabled. *Record* at 20.

Plaintiff requested review of the ALJ's decision. *See id.* at 5. The Appeals Council denied review, thereby making the ALJ's decision final. *Id.* at 1; *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) ("Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal.").

## Analysis

In determining whether Plaintiff's substance abuse is material, a medical expert or the

ALJ must be able to project what limitations would remain if the claimant were to stop the substance abuse. *Salazar*, 468 F.3d at 623. In a teletype on DAA cases, the Commissioner instructs that some of the most useful evidence in projecting what limitations would remain if the claimant stopped using drugs is what the claimant was capable of performing when not using drugs, considering such factors as the length of the period of abstinence and how recently it occurred. *Id.*

Unfortunately, in this case, Plaintiff has not had a recent substantial period of sobriety in which the ALJ could rely on to determine what limitations would remain if she were to stop the substance abuse. Plaintiff did testify at the hearing that she achieved nine months[1] of sobriety in 2000, that it was one of the worst periods of her depression, and that her anxiety level was high. However, no medical or other records appear to relate to this period of sobriety. Furthermore, the ALJ found Plaintiff not fully credible regarding her anxiety. As such, the ALJ must look to medical evidence regarding the claimant's remaining limitations if she stopped the substance abuse. *See Salazar*, 468 F.3d at 623.

If the record is devoid of a medical report, opinion, or projection as to what limitations would remain if the Plaintiff were to stop the substance abuse, the ALJ should find that DAA is not a contributing factor material to a determination of disability. *Id.* at 624. Moreover, when a claimant suffers from other mental disorders in addition to her substance addiction, the ALJ must be able to separate the mental restrictions and limitations imposed by the substance addiction from the other mental disorders. *Id.* at 623. If this is not possible, a finding of not material is appropriate. *Id.*

---

[1] Plaintiff later stated this period of sobriety was from February to August of 2000.

7

The parties disagree as to who bears the burden of proof in materiality determinations. In her motion *(Doc. 15)*, Plaintiff does not specifically mention the issue of who bears the burden of proof but unequivocally places the burden on the ALJ. To the contrary, the Commissioner clearly states in his response *(Doc. 16)* that the burden is on the Plaintiff to establish that her heroin abuse was not a contributing factor material to her disability. *Doc. 16* at 10. And in her reply *(Doc. 17)*, Plaintiff states that the ALJ is incorrect on the issue of who bears the burden of proof. She places the burden on the ALJ and further states that "this court recently made clear that the burden is not on the claimant at step five." *Doc. 17* at 1. In support of her proposition, Plaintiff cites to *Hoelscher v. Astrue*, No. 09-362 ACT, *Doc. 19* at 7 (D.N.M. Feb. 16, 2010) and *Gutierrez v. Astrue*, No. 09-496 LFG, *Doc. 19* (D.N.M. Jan. 6, 2010). Plaintiff's reliance on these cases is mistaken.

*Hoelscher* nor *Gutierrez* involve a Plaintiff with a substance addiction. Accordingly, neither case addresses the issue of who bears the burden of proof in materiality determinations. Both *Hoelscher* and *Gutierrez* correctly state that it is the claimant's burden to prove her disability through step four of the sequential evaluation. If the claimant meets the burden in steps one through four, the burden then shifts to the Commissioner at step five. The same is true in DAA cases, however, the question now at issue is, when the claimant is found disabled with her substance addiction, in continuing the analysis to determine whether the substance addiction is material, does the claimant bear the burden of proving that her substance use is not a contributing factor material to the determination of disability?

Contrary to Plaintiff's contention, courts in this district that have reviewed cases involving claimants with substance addictions have stated that "the claimant has the burden of proving that alcoholism or drug addiction is not a contributing factor material to the

8

determination of disability." *Chavez v. Astrue*, No. 08-1103 WPL, *Doc. 30* at 8 (D.N.M. Jan. 5,

2010); *Padilla v. Astrue*, No. 06-1023 CEG, *Doc. 13* at 15 (D.N.M. Sept. 17, 2009).  I am

unaware of any Tenth Circuit decisions on the issue, but other circuits that have considered the

issue have placed the burden on the claimant to prove that her substance addiction is not a

contributing factor material to the determination of disability.  *See Doughty v. Apfel*, 245 F.3d

1274, 1281 (11th Cir. 2001); *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007), *cert. denied*,

552 U.S. 1141 (2008); *Fastner v. Barnhart*, 324 F.3d 981, 984 (8th Cir. 2003); *Estes v. Barnhart*,

275 F.3d 722, 725 (8th Cir. 2002); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); *Brown

v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999); *see also* Frank S. Bloch, Bloch on Social

Security § 3:39.

I find the above-cited decision persuasive, especially in light of the ALJ's continuing

duty to develop a full and fair record.  "If the ALJ is unable to determine whether substance use

disorders are a contributing factor material to the claimant's otherwise-acknowledged disability,

the claimant's burden has been met and an award of benefits must follow."  *Brueggemann v.

Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003).

In contending that her substance abuse is not material to the determination of her

disability, Plaintiff makes a number of interrelated arguments.  She asserts that the ALJ's

conclusion that absent substance abuse, she would have "moderate" difficulties in concentration,

persistence, or pace and could perform "simple, repetitive, unskilled work" is not supported by

substantial evidence.  She argues that there is medical and other evidence of record that supports

the conclusion that her remaining impairments, and not her drug use, account for her mental

limitations.  Specifically, she contends that: (1)  the ALJ erred in assigning "great weight" to

consulting examining psychologist Dr. Julian Lev's post-hearing report finding "that in the

absence of substance abuse, the claimant would be able to understand and remember instructions and sustain concentration and persist at tasks as long as she was emotionally stable and if her addiction was adequately controlled," *Doc. 15* at 15-16; (2) a diagnosis by treating physician Dr. Miriam Komaromy, which the ALJ did not consider, *see Doc. 17* at 3, and other observations by consulting or treating medical sources support the conclusion that depression is the cause for Plaintiff's heroin use relapses and, thus, that depression alone is what is material to Plaintiff's mental limitations, *Doc. 15* at 6-11; (3)  the ALJ erred by mentioning, but not discussing the weight, he gave to consulting examining psychologist Dr. Finian Murphy's report, which did not attribute Plaintiff's mental limitations to her drug abuse or mention drug abuse as a diagnosis, *id.* at 7-8, 16-17; (4) the ALJ improperly gave only "little weight" to the opinion of Licensed Alcohol and Drug Abuse counselor Patricia Eckart that "the more depressed [Plaintiff] was, the more she used heroin, alcohol, and other drugs in an attempt to overcome her depression" and that Plaintiff's drug use "was motivated largely by her need to self-medicate," *id.* at 8-10, 17-18; (5) the ALJ improperly gave only "little weight" to clinical nurse Cristina Carlson's opinion that Plaintiff's mental impairments and substance abuse were inseparable and that even if Plaintiff stopped using drugs, she would still have the mental limitations, *id.* at 11, 19-20; (6) the ALJ erred in not recontacting Plaintiff's treating sources for "clarification and additional evidence," *id.* at 19; and (7) Plaintiff's testimony, as corroborated by the statement of her mother and medical reports, supports the conclusion that it is her depression and not her drug use that accounts for her mental limitations, *id.* at 5-6; *Doc. 17* at 2.

  Plaintiff maintains that it is impossible to separate her drug use from her depression.  She argues that the ALJ therefore failed to apply the correct legal standards set forth in the Social Security Administration's August 30, 1996 Office of Disability Emergency Teletype which,

under such circumstance, requires a finding that the drug use is "immaterial." *Doc. 15* at 11-12; *see also Salazar*, 468 F.3d at 624.

Plaintiff asserts that the evidence supports a finding that the depression causes the drug use, rather than drug use resulting in mental restrictions, and contends that the ALJ's conclusion that a "moderate" limitation in concentration, persistence, or pace allows for simple, repetitive, unskilled work, is not supported by substantial evidence and is in contravention of Tenth Circuit case law generally, and Social Security Ruling 85-15. *Id.* at 12-13. Finally, Plaintiff argues that the ALJ's opinion is internally inconsistent because he wholly credited Plaintiff's testimony about her limitations at step four of his analysis, but then said he did not fully credit her testimony about anxiety in his subsequent addiction analysis. Specifically, it is argued that the ALJ failed to apply the correct legal standards in making the later conclusion because he did not explain the reason for the inconsistency, used boilerplate language in reaching his conclusion, and based his decision on a failure to follow prescribed treatment, in contravention of case law, regulations, and Social Security rulings. *See id.* at 13-15.

### A. ALJ's Evaluation of Medical Sources

***Treating Sources***

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quotation omitted). Before deciding how much weight to afford a treating sources opinion, the ALJ must first determine if the opinion qualifies for controlling weight. *Id.*

> The analysis is sequential. An ALJ must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p, 1996 WL 374188, at

> *2 (quotations omitted).  If the answer to this question is "no," then
> the inquiry at this stage is complete.  If the ALJ finds that the opinion
> is well-supported, he must then confirm that the opinion is consistent
> with other substantial evidence in the record.  *Id.*  In other words, if
> the opinion is deficient in either of these respects, then it is not
> entitled to controlling weight.

*Id.*

If the ALJ determines that a treating source opinion is not entitled to controlling weight,

the ALJ must then decide whether the opinion should be rejected altogether or assigned some

lesser weight.  *Id.*; *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).  The

relevant factors in making this determination include:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or
> testing performed; (3) the degree to which the physician's opinion is
> supported by relevant evidence; (4) consistency between the opinion
> and the record as a whole; (5) whether or not the physician is a
> specialist in the area upon which an opinion is rendered; and (6) other
> factors brought to the ALJ's attention which tend to support or
> contradict the opinion.

*Id.* at 1301 (citations omitted).  After considering the above factors, the ALJ must then state the

reasons for the weight assigned to the opinion, and if rejected, he must give "specific, legitimate

reasons for doing so."  *Id.* (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)).

Andres Peisajovich, M.D. and Miriam Komaromy, M.D. are Plaintiff's only treating

"medical sources."  The *Record* indicates that Dr. Peisajovich, a physician at UNM Health

Sciences Center, saw Plaintiff on only three occasions.  *See Record* at 299-306.  In his decision,

the ALJ only once mentions Dr. Peisajovich when he states, "It is interesting to note that Dr. A.

Peisajovich pointed out on August 26, 2005 that the claimant's anxiety and panic attacks were

very well controlled with lorazepam."  *Id.* at 18.  Clearly, the ALJ failed to articulate what

weight, if any, he afforded Dr. Peisajovich's opinion.  This failure, however, is harmless as Dr. Peisajovich never projected what mental limitations would remain if Plaintiff stopped the substance abuse.  Therefore, his opinion is irrelevant to the materiality of Plaintiff's substance abuse.

Dr. Komaromy, a physician at Turquoise Lodge, saw Plaintiff upon her admission into Turquoise Lodge on January 31, 2007.  Plaintiff was discharged just three days later against medical advice.  Consequently, there are no medical records from Dr. Komaromy that report on Plaintiff during an actual period of sobriety or that project what limitations would remain if Plaintiff were to stop the substance abuse.  The ALJ did reference Dr. Komaromy's report in finding that Plaintiff was disabled with her substance abuse.  Because Dr. Komaromy's opinion also does not speak to Plaintiff's condition without the substance abuse, it is irrelevant to the ALJ's determination that Plaintiff would not be disabled if she stopped the substance abuse.  Thus, any failure by the ALJ to state the weight he gave Dr. Komaromy's opinion is harmless.

### Consulting/Examining Sources

> State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.  Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled. *See* § 416.912(b)(6).

20 C.F.R. § 416.927.  The ALJ must also explain the weight given to the opinions of State agency consultants, as well as opinions from treating, non-treating, and other examining sources, unless he afforded the treating source opinion controlling weight.  *Id.*

Here, as stated above, the ALJ did not afford either of the treating source opinions

controlling weight.  As such, he is required to state the weight given to the opinions of the State

agency consultants and other nontreating sources.  Finian J. Murphy, Ed. D. and Julian Lev,

Ph.D. are both State agency psychological consultants who examined Plaintiff.  The ALJ clearly

considered Dr. Murphy's opinion in making his finding that Plaintiff is disabled with her

substance abuse.  In determining whether Plaintiff would still be found disabled without the

substance abuse, the ALJ never mentions Dr. Murphy.  Again, although the ALJ did not

articulate the weight he afforded Dr. Murphy's opinion, a remand is not required because Dr.

Murphy did not make a statement on the materiality of Plaintiff's substance abuse.  Thus, Dr.

Murphy's opinion is irrelevant to the ALJ's materiality determination.[2]

As for the opinion of Dr. Lev, the ALJ stated that he paid particular attention to the

"prognosis and treatment recommendations" of Dr. Lev.  The ALJ stated that his RFC is

supported by Dr. Lev's December 1, 2008 opinion in which he indicates

> that in the absence of substance abuse, the claimant would be able to
> understand and remember instructions and sustain concentration and
> persist at tasks.  In addition, she would be able to interact with the
> public, co-workers, and supervisors and would likely be able to adapt
> to changes in the workplace and be aware of normal hazards in the
> workplace.  However, Dr. Lev was also of the opinion that if the

---

[2] Plaintiff also argues that Dr. Murphy's Global Assessment of Functioning (GAF) score of 30, which indicates a "serious impairment in communication or judgment, or inability to function in almost all areas," is highly relevant and was not considered.  While Dr. Murphy did give Plaintiff a GAF score of 30, GAF scores are not conclusive of disability.  Indeed, they can vary greatly overtime.  *See Petree v. Astrue*, 260 F. App'x 33, 41 (10th Cir. 2007) ("[A] GAF score is not a one-time measure of a person's level of functioning that can be expected to remain constant.").  Moreover, "a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record."  *Id.* at 42 (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir.2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.")).  The GAF may indicate problems that do not relate to the ability to hold a job.  *See Camp v. Barnhart*, 103 F. App'x 352, 354 (10th Cir. 2004) (unpublished) (indicating that a GAF of fifty, standing alone, did not establish an inability to work).  Further, the mere failure to discuss the GAF is not sufficient to reverse an ALJ's decision.

Moreover, in his diagnoses Dr. Murphy stated that Plaintiff's "ADLs are in the normal range.  She is oriented in all spheres and has average intelligence."  *Record* at 381.  Plaintiff used correct grammar, her speech was normal, audible, and coherent and she was able to respond to and answer the questions asked of her.  *See id.* at 383.  The ALJ considered Dr. Murphy's opinion in finding Plaintiff disabled with her substance abuse.

> claimant continued to be addicted to heroin, he would expect her
> addiction to contribute to her depression symptoms and make it
> difficult for her to find and maintain employment.

*Record* at 18.  The ALJ further stated that he gave greater weight to Dr. Lev's opinion than to those of Cristina Carlson and Patricia Eckart.

Plaintiff interprets Dr. Lev's statements to mean that her mental impairments pre-exist her addiction such that her substance abuse is not material.  This is simply Plaintiff's interpretation.  Apparently, Plaintiff is under the impression that she has to be completely cured from her depression or else she must be found disabled. Yet continuing depression, if controlled with medication or other therapies, does not automatically disable her or preclude her from working.  *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004).  Plaintiff's argument amounts to asking the Court to reweigh the evidence and substitute its judgment for that of the agency, an invitation the Court must decline.

**Other Sources**

Under the Social Security regulations, "other sources" include medical sources who are not "acceptable medical sources" such as: nurse practitioners, physicians' assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists.  20 C.F.R. § 416.913(d); SSR 06-03p 2006 WL 2263437, *3.  "Other sources" who are non-medical sources include: teachers, counselors, early intervention team members, developmental center workers, daycare center workers, public and private social welfare agency personnel, rehabilitation counselors, spouses, parents, siblings, relatives, friends, etc.  *Id.*  Non-medical testimony cannot establish a medically determinable impairment but may provide insight into the severity of the impairment and its affect on the individual's ability to function.  *Id.*

15

Cristina Carlson, APRN[3], Rev. Patricia L. Eckart, L.A.D.A.C., and Alan M. Goldberg, L.A.D.A.C. are considered "other sources."  The ALJ stated that he considered the Medical Source Questionnaire completed by Cristina Carlson in which she stated that Plaintiff would continue to suffer from severe effects and limitations in functioning due to her mental impairments even if she stopped using heroin.  *Record* at 17.  He made several observations about Ms. Carlson's opinions.  *Id.*  Ms. Carlson stated that it was not completely possible to separate Plaintiff's mental restrictions imposed by her heroin use from those imposed by mental illnesses, and that clearly part of the disability is related to her substance use.  *Id.*

The ALJ gave her opinion little weight "because her questionnaire is a brief, conclusory statement that contains very little in the way of objective clinical findings."  *Id.*  The ALJ further found Ms. Carlson's opinions to be inconsistent with the record as a whole, including her own treatment notes and Dr. Lev's report.  *Id.*  For example, at one point Ms. Carlson noted that Plaintiff was feeling much better overall and that her depression had been diminished during a period when Plaintiff had cut back on her heroin use.  *Id.*  The ALJ also found Ms. Carlson's opinion to be inconclusive.

In considering the opinion of Rev. Patricia L. Eckart, the ALJ stated that he considered her undated letter including the observation that the more depressed the claimant was, the more she used drugs and alcohol.  *Record* at 17.  Ms. Eckart was of the opinion that the claimant's "drug use was motivated largely by her need to self-medicate."  *Id.*  The ALJ gave little weight to Ms. Eckart's opinion because, in his view, it is based primarily on what the claimant told her,

---

[3] A clinical nurse is not considered a treating source and therefore, falls under the category of "other sources," or a medical source who is not an "acceptable medical source."  *See Nichols v. Astrue*, 341 F. App'x 450, 453-54 (10th Cir. 2009).

rather than objective clinical findings.  He further considered the length, nature, and extent of the treating relationship and the nature of Ms. Eckart's specialty.  Because Ms. Eckart had worked with Plaintiff for approximately six months in which she attended weekly counseling sessions only two times a month and group sessions just once or twice a month, the ALJ determined that the length of the treatment relationship was somewhat limited. Additionally, the ALJ noted that because Ms. Eckart is a drug and alcohol counselor rather than a trained psychologist or mental health professional, he gives little weight to her conclusion that Plaintiff's heroin use is largely the result of the purported need to self-medicate her depression.  Moreover, Ms. Eckart did not project what limitations would remain if Plaintiff were to stop the substance use.

Finally, with regards to the opinion of Alan M. Goldberg, the ALJ does not mention Mr. Goldberg at all in his decision.[4]  This is of no consequence, as Mr. Goldberg made no mention of what limitations would remain if Plaintiff were to stop the substance abuse.  Accordingly, his opinion adds nothing of value to Plaintiff's case and any failure by the ALJ to consider it or state the weight given to the opinion is harmless.

In evaluating the medical sources, the ALJ stated appropriate reasons for his reliance on Dr. Lev's opinion that projected what limitations would remain absent Plaintiff's substance use, as well as for the weight which he afforded the opinion.  Furthermore, the ALJ clearly considered the opinions of Cristina Carlson and Rev. Patricia Eckart and stated the weight which he gave their opinions and the reasons for that assessment.  Substantial evidence supports the ALJ's decision, and the correct legal standards were applied.

---

[4] Although Plaintiff has attached a copy of Mr. Goldberg's complete letter to her motion, the *Record* only contains the first page of the two-page letter.  *See Record* at 522.

17

**B. Separability of Mental Impairments and Drug Use**

It is within the ALJ's authority to discredit opinions of "other sources," so long as he states valid reasons.  As established above, the ALJ correctly considered these opinions.  In reaching his conclusion that it is possible to separate Plaintiff's mental restrictions and limitations imposed by her substance use from her other mental disorders, the ALJ properly relied on the opinion of Dr. Lev.  The ALJ applied the correct legal standards in making his materiality determination, and it was supported by substantial evidence.

**C. Moderate Limitations and RFC for Simple, Repetitive, Unskilled Work**

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p.  The RFC assessment considers only limitations and restrictions resulting from medically determinable impairments.  *Id.*  Because there are no allegations of a physical limitation or restriction, the analysis concerns only Plaintiff's mental limitations.

Plaintiff was referred for an assessment of her mental residual functional capacities in October of 2006.  Elizabeth Chiang, M.D. diagnosed Plaintiff with opioid dependence, polysubstance abuse, possible PTSD, and possible major depression.  She stated that Plaintiff's "primary problem continues to be Opioid Dependence, meets 12.09C [and] DAA is material." *Record* at 399.  The ALJ properly analyzed whether Plaintiff met the "paragraph B and C" criteria and properly found that without the substance abuse, Plaintiff would have a "mild" restriction in activities of daily living, "mild" difficulties in social functioning, and "moderate" difficulties in concentration, persistence or pace, and no episodes of decompensation.  The ALJ then determined that Plaintiff would have the RFC for simple, repetitive, unskilled work.

Relying on *Wiederholt v. Barhnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) and *Smith v.*

18

*Barnhart*, 172 F. App'x 795, 800 (10th Cir. 2006), Plaintiff argues that an RFC for simple, repetitive, unskilled work does not incorporate a moderate limitation in concentration, persistence, or pace.  This case, however, is distinguishable from both *Wiederholt* and *Smith*, in which the ALJ consulted a VE and in doing so, failed to include the specific finding of a moderate limitation in concentration, persistence, or pace in his hypothetical.  Here, the ALJ did not consult a VE, yet adequately considered and accounted for his finding that Plaintiff would have moderate limitations in concentration, persistence, or pace.  *See Nixon v. Barnhart*, 49 F. App'x 254, 256 (10th Cir. 2002).  The ALJ did not merely assume that Plaintiff's moderate limitations in concentration, persistence, or pace would be accounted for by limiting her to jobs involving simple and routine tasks, rather, he properly relied on the medical opinion of Dr. Lev. Dr. Lev specifically stated that Plaintiff would be able to understand and remember instructions and sustain concentration and persist at tasks.  He further stated that she would likely be able to adapt to changes in the workplace and be aware of normal hazards.  The basic mental demands of unskilled work include the abilities which Dr. Lev listed.  The ALJ further stated, "If the claimant stopped the substance use, the claimant's ability to perform work at all exertional levels would be compromised by non-exertional limitations.  However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." *Record* at 19.  The ALJ clearly included in his decision a discussion of the supporting evidence and cited to it specifically.  Substantial evidence in the record supports the ALJ's RFC finding and the correct legal standards were applied.

### D. Credibility Determination

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett*, 395 F.3d at

1173 (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)).  An ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (quoting *Huston [v. Bowen]*, 838 F.2d [1125,] 1133 [(10th Cir. 1988)] (footnote omitted)).  In evaluating a plaintiff's credibility, the ALJ must set forth specific evidence he relies on, however, this "does not require a formalistic factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Under Tenth Circuit precedent, if the ALJ considers the requisite factors and links any credibility findings to substantial evidence in the record, then the credibility determination is entitled to deference and this Court cannot reweigh the evidence and substitute its opinion for that of the ALJ.

Furthermore, credibility is not an all or nothing proposition.

> In making a finding about the credibility of an individual's statements, the adjudicator need not totally accept or totally reject the individual's statements.  Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible.  The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree.  For example, an adjudicator may find credible an individual's statement that the abilities to lift and carry are affected by symptoms, but find only partially credible the individual's statements as to the extent of the functional limitations or restrictions due to symptoms; i.e., that the individual's abilities to lift and carry are compromised, but not to the degree alleged.  Conversely, an adjudicator may find credible an individual's statement that symptoms limit his or her ability to concentrate, but find that the limitation is greater than that stated by the individual.

SSR 96-7p, 1996 WL 374186, at *4.

In the case of a claimant with a drug addiction, the ALJ essentially evaluates the claimant twice, once with her substance use and once considering if she were to stop the substance use.

The mere fact that the ALJ found Plaintiff credible in the first instance and not in the second, does not make his credibility findings inconsistent.  Not only was the ALJ evaluating Plaintiff's credibility under two different circumstances, but his findings were with regards to two different issues.  The first was regarding Plaintiff's symptoms and limitations concerning her heroin use, daily activities, and motivation.  While the second credibility determination was with regards to Plaintiff's complaints of anxiety.  The ALJ appropriately linked his findings to substantial evidence in the record which included Plaintiff's testimony and the relevant medical opinions.

In finding Plaintiff not fully credible regarding her complaints of anxiety, the ALJ stated that Plaintiff's non-compliance with her anxiety medications suggests that her symptoms are not as severe as she alleges.  In reaching his conclusion, the ALJ referred to Dr. Peisajovich's note that stated claimant's anxiety and panic attacks were very well controlled with lorazepam, he noted Plaintiff's documented history of non-compliance with her prescription medications and quoted directly from the treatment notes.  Moreover, the record is replete with statements from Plaintiff that her anxiety was well controlled with her medications, and she was feeling much better when taking her medications.  *See Record* at 245, 299, 251, 342-43.  However, Plaintiff contends that her failure to follow her prescribed treatment is reasonable, that the non-compliance by a mentally ill individual should be considered a justifiable refusal, and therefore, the ALJ cannot use this as a reason to find her not credible.

An ALJ may rely on a claimant's failure to take prescribed medication in making his credibility determination.  *See Qualls*, 206 F.3d at 1372-73.  Here, the ALJ did not deny Plaintiff benefits because she failed to follow her prescribed treatment.  *Id.* at 1372.  Rather, he properly considered whether Plaintiff took her anxiety medications in an effort to evaluate the truthfulness of Plaintiffs contention that her anxiety rendered her disabled.  *Id.* (citations omitted).  The Court

finds that the ALJ's credibility determination is not inconsistent and is supported by substantial evidence.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion *(Doc. 15)* is DENIED and the decision of the Commissioner stands.  A final order will be entered concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.